Dan I. Isadore, Petitioner *v.* Workmen's Compensation Appeal Board (Owens-Illinois), Respondents.

Submitted on briefs May 12, 1983, to Judges WIL-
LIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

*George B. Angell,* for petitioner.

*Harry K. Thomas,* with him *Ronald W. Folino,
Knox, Graham, McLaughlin, Gornall and Sennett,
Inc.,* for respondents.

OPINION BY JUDGE DOYLE, September 30, 1983:

Before this Court is an appeal by Dan I. Isadore
(Claimant) from a decision and order of the Work-
men's Compensation Appeal Board (Board) affirm-
ing a referee's denial of disability benefits predicated
on Claimant's failure to prove an injury in the course
of his employment.

Claimant was employed as an "off-bearer" by
Owens-Illinois (Employer). His job involved push-
ing and lifting items along and from a conveyor. In
denying Claimant's petition for disability benefits,
the referee made the following pertinent findings of
fact, which essentially establish the framework of the
issues in controversy:

3. In support of his petition, the Claimant testified that he had undergone back surgery on June 29, 1976, but after a recooperative [sic] period, returned to work without any difficulty. He further testified that in the middle of October of 1978, and not on September 27, 1978, as indicated in his Claim Petition, while lifting a stack of corrugated paper, he felt something snap in his back and went down. He further experienced sharp pain in his back running down his right leg. The Claimant further testified that he sought medical attention and continued working until February 1, 1979. Prior thereto on January 12, 1979, he got a sudden pain in his back, the same as that which had occurred in October of 1978. At the hearing of April 17, 1979, the Claimant testified that the pain was not too bad at that time because he had not tried lifting things.

4. The Defendant presented the testimony of a private investigator. He had taken films of Claimant on April 10, 1979; April 12, 1979 and May 4, 1979. On all three occasions, the films showed that Claimant was lifting items weighing anywhere up to a hundred pounds without any difficulty. The film of April 10, 1979, taken prior to the Claimant's testimony of April 17, 1979, showed the Claimant changing tires, crawling under a truck and lifting cases of antifreeze weighing sixty-two pounds. All this was done without any apparent difficulty.

5. The Claimant presented the testimony of Edwin Medden, M.D. Dr. Medden first saw the Claimant on October 2, 1978. The history

given by Claimant was that on September 27, 1978, he was pushing stock and suffered pain. The Claimant canceled an appointment with Dr. Medden scheduled for October 9, 1978, and Dr. Medden assumed that the back was better. Dr. Medden next saw the Claimant on April 18, 1979 and was given a history of Claimant's back again beginning to hurt at work on January 12, 1979. Based on the history given to him by Claimant, Dr. Medden felt that the September 1978 incident probably caused the Claimant's current problems.

6. The Claimant also presented the testimony of Arthur B. King, M.D., a Board certified neurosurgeon. Dr. King had performed surgery on the Claimant's back at which time he removed a disc at the L-5 level on June 29, 1976. He then saw the Claimant on March 30, 1979, at which time the Claimant told him that he had no difficulty with his back after the surgery until October of 1978, when he felt something snap in his back at work. He continued working until January 12, 1979, when it became more uncomfortable than usual. Dr. King was of the opinion, accepting the history given to him by Claimant as correct, that something happened to Claimant in the latter part of 1978. Dr. King further testified that after the surgery of June 1976, the Claimant did not have a normal back. Dr. King was shown portions of the film taken of Claimant, and was of the opinion that if the Claimant did suffer an aggravation of his back in the course of his employment, said aggravation certainly would have ended by the time the films were taken.

He also indicated that it was further possible that if the Claimant did, in fact, suffer aggravation in September of 1978, the aggravation could have ended shortly thereafter.

7. The Claimant also presented the testimony of Henry M. Min, M.D., an orthopedic surgeon. Dr. Min first examined the Claimant on September 9, 1979 and diagnosed the Claimant's condition as a possible ruptured disc at the L-4, L-5 level on the right. Dr. Min testified that the Claimant had told him he had problems with his back an entire period of time since October of 1978. He did admit that the lifting of heavy objects, as shown in the films taken of Claimant, was inconsistent with the Claimant's complaint of constant pain.

The referee thus concluded that Claimant had failed to meet his burden of proving that he had sustained an injury in the course of his employment. The Board affirmed without taking additional evidence. The appeal to this Court followed in which Claimant asserts the Board should be reversed because the motion pictures of Claimant were inadmissible as evidence and the findings of the referee were arbitrary and in capricious disregard of the evidence.

The claimant for workmen's compensation disability benefits has the burden of proving that he was injured in the course of his employment. *A. Rifkin Co. v. Workmen's Compensation Appeal Board*, 34 Pa. Commonwealth Ct. 607, 409 A.2d 367 (1978). Where, as here, the party with the burden of proof did not prevail before the referee and the Board affirmed without taking additional evidence, this Court's scope of review is limited to determining whether the findings of fact are consistent with each other and the

conclusions of law and whether there was a capricious disregard of competent evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). On appeal, the party which prevailed below is entitled to the benefit of the most favorable inferences to be drawn from the evidence presented. *Id.*

With respect to the issue of the admissibility of the motion picture evidence, Claimant points out that the films were not taken during a normal surveillance situation but rather that Claimant's actions were induced by payment under the pretext that he was aiding in a criminal investigation. This, in turn, allegedly created an inordinate and unreasonable risk of Claimant further injuring himself, especially in light of the fact that no physician was consulted prior to the induced activities and Claimant's purported susceptibility to such inducements resulting from a need for money. Finally, it is asserted that conducting the filming after litigation had commenced in the instant matter without notifying Claimant's counsel was improper. Accordingly, Claimant argues that the films were inadmissible as a matter of law. We must disagree. Motion pictures, while not sufficient standing alone to satisfy a party's burden in a workmen's compensation case, are admissible as evidence for the purpose of establishing facts. *John B. Kelly Co. v. Davis,* 8 Pa. Commonwealth Ct. 589, 303 A.2d 255 (1973). They need not be taken with either the knowledge or consent of the claimant. *DeBattiste v. Anthony Laudadio & Son,* 167 Pa. Superior Ct. 38, 74 A.2d 784 (1950). In the case at bar, the films were not used to conclusively establish that Claimant suffered no disability but rather to impeach the credibility of his evidence that he was disabled and as evi-

dence that he was not disabled. Viewed in this light, while we do not condone the tactics by which Employer obtained the films, we have no choice but to hold that they were properly admitted into evidence in the instant matter.

We also find Claimant's challenge to the referee's findings of fact to be without merit. It is well settled that questions of evidentiary weight and credibility and the resolution of conflicts in the testimony are for the referee, not this Court. *Cox v. Workmen's Compensation Appeal Board,* 60 Pa. Commonwealth Ct. 59, 430 A.2d 1009 (1981). In performing this function, the referee is free to accept or reject all or any portion of the testimony of any witness. *Crouse v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 430, 426 A.2d 749 (1981). This Court will not determine the probative value of the evidence even if on the same record we might have reached a different result. *Cox.* In the case at bar, Claimant's witnesses presented testimony which was equivocal as to causation and inconsistent insofar as what Claimant considered to be the date he incurred his current disability. Each of the physicians agree that what they observed Claimant doing in the motion pictures was inconsistent with their diagnosis of Claimant's condition, diagnoses rendered in large part as a result of histories and symptomology given to them by Claimant. While Claimant argues that the films do not depict the repetitious motions characteristic of his job, such an argument goes to the weight of the evidence. In light of this and the fact that the referee's findings are essentially the product of his resolution of the conflicting evidence presented, we must affirm them and accordingly, we also affirm the denial of benefits.

ORDER

Now, September 30, 1983, the decision and order of the Workmen's Compensation Appeal Board in the above captioned matter, A-80444, is hereby affirmed.