# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Annamma Jacob,                                              :
                              Petitioner        :
                                                        :
          v.                                             :   No. 1810 C.D. 2017
                                                        :   Submitted: May 11, 2018
Workers' Compensation Appeal                               :
Board (Cardone Industries, Inc. and                        :
Phoenix/Travelers Insurance                                :
Companies),                                                :
                        Respondents       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED:  JULY 18, 2018**

Annamma Jacob (Claimant) petitions for review from two orders of the Workers' Compensation Appeal Board (Board) affirming the decisions of a workers' compensation judge (WCJ). The WCJ dismissed a petition for reinstatement (Reinstatement Petition) and denied a claim petition (Second Claim Petition) filed by Claimant. In the Reinstatement Petition and the Second Claim Petition, Claimant alternately argued that on her return to work following her recovery from a prior work injury, she incurred either a recurrence of the prior injury or a new work injury. Upon review, we affirm the Board's orders.

## I. Background

The parties have a long history of litigation that began in 2003. The same WCJ presided throughout. We summarize the pertinent facts as follows.

## A. Original Work Injury

In September 2003, Claimant was employed by Cardone Industries, Inc. (Employer) when her hair caught in a machine at work. WCJ's Op., 9/27/16 (WCJ Reinstatement Op.), Finding of Fact (F.F.) No. 1. There was no visible injury at that time. Id. However, Claimant subsequently stopped working and filed a claim petition (First Claim Petition) alleging she sustained injuries to her head, neck, and shoulder when she was pulled toward the machine. In a March 2006 decision, the WCJ found Claimant incurred a work injury described as a "cervical strain." Id. The WCJ granted the First Claim Petition for a closed period, finding Claimant fully recovered by March 2004. Id. Both the Board and this Court affirmed. Id., F.F. No. 2.

While the First Claim Petition was pending, Claimant returned to work for Employer in June 2005. Id., F.F. No. 9. Employer provided light duty employment and work hardening physical therapy. Id., F.F. No. 10. However, Claimant stopped working in July 2005, alleging the work and the physical therapy caused her too much pain. Id., F.F. No. 11. She did not at that time notify Employer of any new work injury. WCJ's Op., 5/13/16 (WCJ 2nd Claim Pet. Op.), F.F. No. 10(a). Claimant applied for and received Social Security disability benefits, on the basis that she was totally disabled from any kind of work. Id., F.F. No. 5(b), (c).

## B. Reinstatement Petition

More than two years later, in October 2007, Claimant filed the Reinstatement Petition. WCJ Reinstatement Op., F.F. No. 3. She alleged her

2

disability from her original injury recurred when she attempted to return to work in July 2005. Bd. Op., A16-1141,[1] 11/14/17 (Bd. Reinstatement Op.), at 1.

In July 2008, the WCJ dismissed the Reinstatement Petition. WCJ Reinstatement Op., F.F. No. 4. The WCJ concluded the Reinstatement Petition was barred by the doctrine of res judicata, finding Claimant was seeking to support the Reinstatement Petition by expanding her original adjudicated injury. Id. On appeal, the Board affirmed, but this Court vacated and remanded to the WCJ for consideration of the Reinstatement Petition on the merits. Bd. Reinstatement Op. at 1.

In her September 2016 decision, the WCJ dismissed the Reinstatement Petition on the merits, finding Claimant failed to meet her burden of proving a recurrence of any disability resulting from her work injury. Id. The Board affirmed. Claimant now petitions to this Court for review.

**C. Second Claim Petition**

While the Reinstatement Petition was pending, Claimant filed the Second Claim Petition in January 2008. Bd. Op., A16-0602, 11/14/17 (Bd. 2nd Claim Pet. Op.), at 2. As an alternative to the recurrence theory of the Reinstatement Petition, in the Second Claim Petition, Claimant alleged she incurred new physical and psychological work injuries in July 2005. Id.

---

[1] The Board issued two substantially identical opinions and orders on the same date. In A16-1141 (Bd. Reinstatement Op.), the Board affirmed the WCJ's decision on the Reinstatement Petition. In a separate decision, A16-0602 (Bd. 2nd Claim Pet. Op.), the Board affirmed the WCJ's decision on the Second Claim Petition, discussed below.

In the course of litigating the Second Claim Petition, Claimant alleged bias by the WCJ and moved for her recusal. The WCJ denied the recusal motion in December 2009, but certified the issue for immediate appeal. Id. at 8. The Board affirmed. Id. The Board refused to certify the issue for immediate review by this Court. We denied Claimant's application for interlocutory review.

In June 2011, the WCJ denied the Second Claim Petition. Id. at 2. Claimant appealed to the Board, which remanded. Id. The Board found the WCJ failed to list certain documents as part of the record. Id. The Board also found the WCJ failed to summarize and issue an express credibility determination concerning Claimant's testimony. Id. The Board directed the WCJ to correct the record list and issue new findings and conclusions on remand, based on the entire record. Id.

In May 2016, the WCJ issued her decision on remand. Id. The WCJ issued new findings and conclusions as directed, including credibility determinations. She again denied the Second Claim Petition. Id. The WCJ found Claimant failed to sustain her burden of proving any injury in July 2005 arising from either her work for Employer or the work hardening physical therapy Employer provided. Id. The Board affirmed. Claimant now petitions to this Court for review.

4

## II. Issues

On appeal,[2] Claimant lists seven pages of issues, which she discusses at excessive length in her principal brief.[3] However, all of the asserted errors fall into three related categories. First, Claimant asserts the WCJ capriciously disregarded evidence in rendering her credibility determinations. Second, Claimant argues the WCJ should have recused herself because she displayed a bias against Claimant and Claimant's counsel. Third, Claimant contends the WCJ's errors foreclosed Claimant's right to obtain an award of attorney fees for Employer's unreasonable contest.

Employer responds that the record contains substantial evidence in support of the WCJ's decisions. Employer further argues the record does not reveal any bias by the WCJ. In addition, Employer contends Claimant waived her claims in the Second Claim Petition by failing to provide timely notice to Employer of an alleged new injury in 2005.

---

[2] Our review in a workers' compensation appeal is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.), 176 A.3d 1045 (Pa. Cmwlth. 2018) (en banc).

[3] The argument section alone of Claimant's principal brief is 50 pages long. An additional 23 pages (improperly numbered with Roman numerals) comprise the other substantive sections.

In its brief, Employer challenges Claimant's compliance with the 14,000-word limit under Pa. R.A.P. 2135(a). In response, Claimant's counsel states the word count for the principal brief is 13,958 words. However, this Court's examination of the portions of Claimant's brief includable under Rule 2135(b) yielded a count of 15,093 words.

Notably, Claimant previously submitted a written application to extend the word limit. Our President Judge denied the application and expressly directed Claimant to comply with the word limit of Rule 2135. We remind Claimant's counsel that Rule 2135 is mandatory and that all applicable portions of appellate briefs must be included in word counts.

5

## III. Discussion

### A. Untimely Notice of New Injury (Second Claim Petition)

Under Section 311 of the Workers' Compensation Act,[4] 77 P.S. §631, Claimant was required to give Employer notice of her alleged work injury within 120 days of its occurrence. A previously injured claimant alleging a separate injury, as opposed to a recurrence or aggravation of an original injury, must provide notice of the separate injury. See Pa. Mines Corp./Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Mitchell), 646 A.2d 28 (Pa. Cmwlth. 1994). Claimant bears the burden of establishing that she gave timely notice of her alleged injury. A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013). Whether Claimant provided timely notice is a question of fact. Id. Thus, this Court must affirm the WCJ's finding concerning notice if the record contains substantial evidence to support it. Id.

A witness for Employer testified that the first notice Employer received concerning an alleged new injury in 2005 was Claimant's filing of the Second Claim Petition in January 2008. WCJ 2nd Claim Pet. Op., F.F. No. 10(a). Notably, even then, the Second Claim Petition alleged only a repetitive work injury. Id. It did not mention any alleged improper work hardening as a causative factor in any injury to Claimant. Id.

The WCJ credited Employer's evidence. She also found inferential record support for the lack of notice. This included the absence of any medical note excusing Claimant from returning to work for Employer, the lack of any

---

[4] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2708.

6

contemporaneous medical treatment, and Claimant's failure to report any new injury or recurrence during her September 2005 examination by Leonard Kamen, M.D. (Claimant's Medical Expert). Id., F.F. No. 19. Accordingly, the WCJ concluded Claimant failed to provide timely notice of an alleged new injury for purposes of the Second Claim Petition. Id.

Claimant points to record evidence she believes demonstrates timely notice. This evidence includes three letters from her counsel to Employer in July and August 2005, as well as Claimant's testimony that she complained of pain during the work hardening physical therapy Employer provided. We discern no merit in this argument.

Contrary to Claimant's assertion, none of the record evidence establishes notice to Employer of any alleged new injury. In the first letter, counsel stated Claimant missed work after July 15, 2005 "by reason of her work injuries/treatment." Certified Record, Reinstatement Petition (C.R.R.) Item No. 47, Ex. C-Remand-33 (letter dated July 19, 2005). The second letter repeated that statement. Id. (letter dated July 25, 2005). The third letter stated Claimant was having "too much pain to immediately work any job" and was "still substantially disabled." Id. (letter dated August 5, 2005).

Nothing in any of these statements indicated Claimant suffered any new injury. To the contrary, as the record reveals Claimant did not seek medical attention immediately following her departure from work in July 2005, the reference to "treatment" in the July letters could only have related to the course of treatment,

7

generally, that Claimant received for her original 2003 injury. <u>See</u> <u>id.</u> (letters dated July 19 and 25, 2005). Similarly, the August letter's statement that Claimant was "still" disabled implied ongoing disability from the original injury, not a new one. <u>See</u> <u>id.</u> (letter dated August 5, 2005).

Claimant also contends the WCJ erred by refusing to open the record in the First Claim Petition, thereby preventing Claimant from submitting additional evidence that would have demonstrated notice of a July 2005 injury. However, any supplementary evidence Claimant might have submitted had the WCJ reopened the record in the First Claim Petition could not have supported her notice argument regarding the Second Claim Petition. By definition, any such evidence could only have related to the 2003 injury, not a new injury that allegedly occurred in 2005.

The evidence concerning Claimant's work hardening therapy in June and July 2005 likewise reveals no notice by Claimant of any new injury. Claimant argues she complained of pain throughout her therapy and that her condition deteriorated over the period she was undergoing therapy. She fails to point to anything in those facts that suggested to Employer that Claimant incurred a new work injury.

Notably, Claimant's original work injury was still in litigation in 2005, pursuant to the First Claim Petition. Nothing in any of the evidence recited by Claimant would have put Employer on notice that Claimant believed a new injury occurred in June or July 2005.

Thus, the record contains substantial evidence supporting the WCJ's finding that Claimant failed to provide timely notice of a new injury in 2005. We will not disturb that finding of fact. Accordingly, Claimant is barred from any recovery sought in the Second Claim Petition.

Nevertheless, for completeness, and because the evidence and the Board's opinions generally related equally to the Reinstatement Petition and the Second Claim Petition, we include the Second Claim Petition in our discussion of the remaining issues on appeal.

**B. Capricious Disregard of Evidence**

Claimant insists the WCJ capriciously disregarded relevant competent evidence in both the Reinstatement Petition and the Second Claim Petition proceedings. Although Claimant's arguments are somewhat unclear, she appears to assert primarily that the WCJ should have disregarded all testimony of Employer's witnesses because of alleged conflicts in the testimony, both among various Employer witnesses and between the direct and cross-examination testimony of each witness. This argument lacks merit.

Capricious disregard of evidence occurs when a fact-finder deliberately ignores relevant competent evidence. Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works), 862 A.2d 137 (Pa. Cmwlth. 2004). Considering and rejecting evidence does not constitute capricious disregard. Id. Moreover, the fact-finder does not capriciously disregard evidence merely because she does not expressly discuss every piece of evidence in a written decision. The WCJ is not

required to make findings regarding every piece of evidence and every statement made by every witness; she only needs to provide the crucial findings necessary to allow the Board to review the decision. Id.; Pistella v. Workmen's Comp. Appeal Bd. (Samson Buick Body Shop), 633 A.2d 230 (Pa. Cmwlth. 1993).

It is the WCJ's function, as the finder of fact, to resolve inconsistencies in the evidence. Johnson v. Workers' Comp. Appeal Bd. (Abington Mem'l Hosp.), 816 A.2d 1262 (Pa. Cmwlth. 2003). This includes resolution of conflicting testimony by different witnesses, as well as internal inconsistencies within the testimony of a single witness. Id. The WCJ may accept or reject, in whole or in part, the testimony of any witness. A & J Builders. We are bound by those credibility determinations. Id.

Claimant points to many individual pieces of evidence she contends the WCJ improperly credited or failed to credit, and which she insists compel factual findings different from those reached by the WCJ. However, Claimant's factual argument misapprehends the legal issue before this Court on appeal. Our inquiry is not whether the record would support findings different from those made by the WCJ, but rather, whether there is record support for the findings actually made. Id. Here, the record contains ample support for the WCJ's findings.

## 1. Claimant's Credibility

The WCJ cited substantial record evidence to support her determination that Claimant's claim of a new or recurring injury was not credible. As discussed in the next section, there was no objective medical evidence to support Claimant's

subjective complaints. Further, at a physical examination with her prior treating physician just a few days before Claimant stopped work in July 2005, she told him she was comfortable doing the work Employer assigned her. WCJ Reinstatement Op., F.F. No. 19; C.R.R., Item No. 33, Dep. of Dr. Leonard Kamen, 12/17/08 (Kamen Dep.), at 223; WCJ's Hr'g, Notes of Testimony (N.T.), 1/7/09, at 49. The WCJ found this statement by Claimant discredited her complaints of pain arising from work. WCJ Reinstatement Op., F.F. No. 28.

When Claimant stopped working for Employer in July 2005, she had no medical release from work. WCJ 2nd Claim Pet. Op., F.F. No. 5(c); N.T., 1/7/09, at 5-53, 55. She did not seek medical treatment at that time. WCJ 2nd Claim Pet. Op., F.F. No. 5(c); N.T., 1/7/09, at 56-57. She did not call off work as required by her union bargaining agreement and did not file any grievance under the bargaining agreement. WCJ 2nd Claim Pet. Op., F.F. No. 5(c); N.T., 1/7/09, at 34, 57, 59. Later that summer, she underwent an EMG through her treating physician, and after receiving normal results, she changed doctors and began seeing Claimant's Medical Expert. WCJ 2nd Claim Pet. Op., F.F. No. 5(c); N.T., 1/7/09, at 59-61.

Record evidence also undermined Claimant's argument that the pain she experienced was work-related. Notably, Claimant discontinued earlier work hardening efforts through a prior treating doctor because of flare-ups in her symptoms in April and May 2005, before her return to work for Employer. Id., F.F. No. 5(c); WCJ Reinstatement Op., F.F. No. 19; Kamen Dep. at 222-23. In addition, in the Second Claim Petition, Claimant alleged only a work injury from repetitive activity, not an injury from Employer's work hardening therapy. WCJ 2nd Claim

11

Pet. Op., F.F. No. 10(a). Claimant testified she was injured by both. N.T., 1/7/09, at 18-19. However, Claimant's Medical Expert conceded Claimant's job in June and July 2005 was self-paced, and self-paced work is not considered repetitive in nature. Id., F.F. Nos. 6(f), 10(d); Kamen Dep. at 236; see also WCJ 2nd Claim Pet. Op., F.F. Nos. 7, 13 (Claimant acknowledged Employer instructed her to work at her own pace).

Claimant made inconsistent representations concerning her injuries that further undermined her credibility. As stated above, in the Second Claim Petition, Claimant alleged only a repetitive motion injury from her job, and not an injury from her work hardening therapy. After first testifying that both repetitive motion and work hardening injured her, Claimant later specifically testified that the work hardening therapy was not what kept her from working after July 15, 2005. N.T., 1/7/09, at 64-65. By contrast, during an independent medical examination by Dr. I. Howard Levin (Employer's Medical Expert) in October 2008, Claimant alleged a 2005 injury arising solely from work hardening efforts, and not from any repetitive work activity. Id., F.F. No. 12(c); N.T., 6/26/09, at 12-13.

Notably, Claimant filed no workers' compensation petition in the summer of 2005 after leaving her job with Employer. When she first saw Claimant's Medical Expert in September 2005, she did not mention any injury in July of that year arising from either her work for Employer or the work hardening physical therapy. WCJ 2nd Claim Pet. Op., F.F. No. 6(e); Kamen Dep., Ex. C Kamen-2 report dated September 7, 2005. However, she filed a complaint with the Pennsylvania Human Relations Commission (PHRC) in August 2005. Certified

12

Record, Second Claim Petition (C.R. CP2), Item No. 42. Although her 2003 work injury arose from pulling by the machine when her hair was caught, Claimant inconsistently alleged in her PHRC complaint that she suffered a "spinal cord compression" in the 2003 work incident.[5] WCJ 2nd Claim Pet. Op., F.F. Nos. 7, 13, F.F. Nos. 5(c), 6(d); WCJ's Hr'g, 1/7/09, at 62-63. Claimant's Medical Expert acknowledged he never treated Claimant for that condition because she did not have it. WCJ 2nd Claim Pet. Op., F.F. Nos. 7, 13, F.F. No. 6(f); Kamen Dep. at 185.

In addition, and of significance, Claimant suffered new injuries unrelated to her employment in an automobile accident on August 24, 2007. WCJ 2nd Claim Pet. Op., F.F. No. 7. However, she did not tell Claimant's Medical Expert about the accident when she saw him a few days later. WCJ Reinstatement Op., F.F. No. 19; WCJ 2nd Claim Pet. Op., F.F. No. 6(c) n.17; see also Kamen Dep., Ex. C Kamen-2, reports dated 8/28/07 (no mention of intervening motor vehicle accident), 10/22/07 (medical history unchanged). In fact, Claimant treated with different medical providers in connection with the accident. WCJ 2nd Claim Pet. Op., F.F. Nos. 5(c) n.16; No. 6(c) n.17; Dep. of Dr. I. Howard Levin, 3/18/10 (Levin Dep.), at 74-87, Exs. D Levin-4, 7, 8, 9. She did not disclose the accident to either Claimant's Medical Expert or Employer's Medical Expert, even though she filed a separate civil tort action alleging permanent serious injuries to her head, neck, back, arms, legs, and body resulting from that accident.[6] WCJ Reinstatement Op., F.F. No. 20; WCJ

---

[5] The Pennsylvania Human Relations Commission complaint was closed administratively without action in November 2007. WCJ's Op., 5/13/16 (WCJ 2nd Claim Pet. Op.), F.F. No. 10(d).

[6] This claim was at odds with Claimant's assertion, in her brief in this appeal, that her injuries from the automobile accident were confined to the opposite side of her neck and the opposite shoulder from her work injury.

2nd Claim Pet. Op. F.F. Nos. 7, 12(c); N.T., 6/26/09, at 8 (Claimant told Employer's Medical Expert she was seeing only two doctors, Claimant's Medical Expert and her family doctor), 11-13 (Claimant told Employer's Medical Expert she suffered no head or neck trauma, other than Employer's physical therapy, since 2004); Levin Dep. at 74-87, Exs. D Levin-4, 7, 8, 9. In her sworn testimony before the WCJ, Claimant failed to reveal the accident and her subsequent medical treatment in response to specific questions by Employer's counsel asking her to list all doctors who had treated her for any reason since 2004. WCJ 2nd Claim Pet. Op., F.F. Nos. 7, 13; N.T., 1/7/09, at 8-13. Similarly, she apparently did not disclose her workers' compensation claims in litigating the automobile accident, as she submitted a benefit application to Allstate Insurance in September 2007 in connection with the accident, in which she specifically denied any eligibility for workers' compensation benefits. WCJ 2nd Claim Pet. Op., F.F. Nos. 7, 13; Levin Dep., Ex. D Levin-9.

Claimant suggests the automobile accident is irrelevant to her credibility because it occurred two years after she stopped working for Employer. This argument misses the point. As discussed above, the WCJ found as a fact that Claimant did not provide notice to Employer of any alleged 2005 new injury until she filed her Second Claim Petition in January 2008. That was after the automobile accident. The timing of the Reinstatement Petition and the subsequent Second Claim Petition, the deliberate separation of the medical providers treating Claimant in relation to her workers' compensation claims and her tort claims, and her failure to disclose either claim to the parties and medical providers involved in the other claim, all substantially undermine Claimant's credibility, both in general and specifically in connection with her claims against Employer.

14

## 2. Credibility of Claimant's Medical Expert

Claimant's Medical Expert is board-certified in physical medicine and rehabilitation. WCJ 2nd Claim Pet. Op., F.F. No. 6(a). Claimant's Medical Expert offered a diagnosis of brachial plexus injury, cervical disc disease, and chronic pain syndrome with depressive features, as of his first examination of Claimant in September 2005. Id., F.F. No. 6(b); Kamen Dep. at 54-55. The WCJ rejected his opinion as not credible and not supportive of Claimant's petitions for a number of reasons.

Claimant's Medical Expert opined Claimant was unable to work as of September 2005. Id., F.F. No. 6(d); Kamen Dep. at 67-68. However, he could not support Claimant's assertion of disability in July 2005 because he did not examine her at that time. Id.

A new MRI in August 2005 showed no change from an earlier study and revealed no acute trauma to Claimant's neck. WCJ Reinstatement Op., F.F. No. 18; Kamen Dep. at 190, 194. Electronic imaging in September 2005, ordered specifically to support Claimant's Medical Expert's diagnosis of brachial plexus, showed none. WCJ Reinstatement Op., F.F. No. 18; WCJ 2nd Claim Pet. Op., F.F. No. 6(f); Kamen Dep. at 191, 194. Although Claimant's Medical Expert criticized how that imaging was performed, he did not order another one. WCJ Reinstatement Op., F.F. No. 18; WCJ 2nd Claim Pet. Op., F.F. No. 6(f); Kamen Dep. at 192. Claimant's Medical Expert acknowledged there were no diagnostic study results to support Claimant's subjective complaints. WCJ Reinstatement Op., F.F. No. 18; Kamen Dep. at 200-01.

The WCJ further rejected Claimant's Medical Expert's opinion to the extent it was based on information provided to him by Claimant, inasmuch as the WCJ rejected Claimant's evidence as itself not credible. WCJ Reinstatement Op., F.F. No. 31. This was within the WCJ's discretion. See Jensen v. Workers' Comp. Appeal Bd. (Pleasant Valley Manor) (Pa. Cmwlth., No. 23 C.D. 2016, filed October 31, 2016), 2016 WL 6407291 (unreported).

### 3. Credibility of Employer's Witnesses

Claimant argues that various witnesses for Employer contradicted themselves and each other in their testimony. However, in light of the WCJ's determination that Claimant and her medical witness were not credible, Claimant could not sustain her burden of proof, regardless of whether Employer's witnesses were credible. See Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe), 812 A.2d 478 (Pa. 2002) (unburdened party has no obligation to present any proof; adjudication may rest on agency's disbelief of claimant's evidence); Hills Dep't Store No. 59 v. Workmen's Comp. Appeal Bd. (McMullen), 646 A.2d 1272 (Pa. Cmwlth. 1994) (once petitioner's evidence was rejected as not credible, petitioner failed to meet burden of proof).

Nonetheless, the WCJ provided extensive findings in support of her credibility determinations regarding Employer's witnesses. Most significantly, concerning the conflicting medical evidence, the WCJ set forth at length the medical evidence from Employer on which she relied and which she credited over that offered by Claimant.

16

Employer's Medical Expert is a board certified neurologist with expertise in the performance and interpretation of electrodiagnostic tests, as well as in the diagnosis and treatment of cervical strains and brachial plexus injuries. WCJ 2nd Claim Pet. Op., F.F. No. 12(a); N.T., 6/26/09, at 4; Ex. D-13. Having examined Claimant earlier in connection with the First Claim Petition, he performed a repeat examination in October 2008. WCJ 2nd Claim Pet. Op., F.F. No. 12(c); N.T., 6/26/09, at 6.

Employer's Medical Expert testified there were no objective clinical findings or diagnostic studies to support Claimant's complaints of pain. WCJ 2nd Claim Pet. Op., F.F. Nos. 12(c), (f); N.T., 6/26/09, at 17-18. He found no evidence of brachial plexopathy. WCJ 2nd Claim Pet. Op., F.F. No. 12(c); N.T., 6/26/09, at 18, 24. Employer's Medical Expert opined that any restriction of Claimant's range of motion was a matter within her own control. WCJ 2nd Claim Pet. Op., F.F. No. 12(c); N.T., 6/26/09, at 24-25. He saw no evidence of any new injury or aggravation of a previous injury. WCJ 2nd Claim Pet. Op., F.F. No. 12(f); N.T., 6/26/09, at 22, 29. Employer's Medical Expert concluded there was no need for any further medical treatment. WCJ 2nd Claim Pet. Op., F.F. No. 12(f); N.T., 6/26/09, at 28, 34. He suggested the ongoing treatment Claimant received from her own doctor only served to prolong her subjective symptoms by encouraging inappropriate pain and illness behaviors. WCJ 2nd Claim Pet. Op., F.F. No. 12(f); N.T., 6/26/09, at 32-34.

Employer's Medical Expert also criticized the opinions offered by Claimant's Medical Expert. Employer's Medical Expert found no evidence to support an October 2005 diagnosis of post-traumatic cervical dystonia by Claimant's

17

Medical Expert. WCJ 2nd Claim Pet. Op., F.F. No. 12(g); N.T., 6/26/09, at 41-43. He also disagreed with the diagnosis of brachial plexus stretch injury made by Claimant's Medical Expert in connection with Claimant's 2003 injury. WCJ 2nd Claim Pet. Op., F.F. No. 12(g); N.T., 6/26/09, at 43-45. Further disagreeing with Claimant's Medical Expert, Employer's Medical Expert opined Claimant did not sustain any new injury or exacerbation as a result of either repetitive work activity or work hardening physical therapy in July 2005. WCJ 2nd Claim Pet. Op., F.F. No. 12(h); see generally N.T., 6/26/09.

The WCJ explained she found the medical opinion of Employer's Medical Expert credible because of both his testimony and his demeanor. WCJ 2nd Claim Pet. Op., F.F. No. 18. She concluded his opinion was both well-reasoned and supported by objective clinical findings. Id. Similarly, the WCJ found Employer's other witnesses credible both because of their demeanor and because their testimony was supported by documentation in the record. Id., F.F. Nos. 14-16.

As the foregoing discussion demonstrates, the WCJ cited substantial record evidence in support of her factual determinations. Consequently, we will not disturb the WCJ's findings of fact.

**C. Recusal**

Claimant filed the motion for recusal solely in connection with the Second Claim Petition. She did not file a similar motion relating to the Reinstatement Petition. Contrary to Claimant's suggestion, nothing in the record indicates the two petitions were ever consolidated. Because we agree with the WCJ

18

that the Second Claim Petition is barred because of untimely notice of the alleged injury, the recusal motion is moot. Even if it were not, we would affirm its denial.

Recusal of a WCJ is required only if there is a substantial reasonable doubt of her ability to preside impartially. Tindal v. Workers' Comp. Appeal Bd. (City of Phila.), 799 A.2d 219 (Pa. Cmwlth. 2002). Adverse rulings do not demonstrate bias. Dow v. Workers' Comp. Appeal Bd. (Household Fin. Co.), 768 A.2d 1221 (Pa. Cmwlth. 2001). Moreover, the WCJ has broad discretion in making such rulings, as well as in determining the time allowed for witness examinations. Kope v. Workmen's Comp. Appeal Bd. (Borg Warner Corp.), 510 A.2d 1294 (Pa. Cmwlth. 1986). A WCJ's decision on a recusal motion is also discretionary and will not be overturned absent an abuse of that discretion. Tindal.

The Board correctly found many of Claimant's complaints alleging bias by the WCJ fell into the categories of evidentiary rulings and limitations on the length of hearings and witness examinations. We find no abuse of discretion in the evidentiary rulings.[7] Regarding the time limitations imposed by the WCJ, as the Board observed in its opinion on appeal of the WCJ's recusal decision, this case

---

[7] While this appeal was pending, Claimant filed an application for relief titled "Motion for Order to Assure a Full Record" (Motion). Claimant asserts the WCJ's 2011 decision, which the Board remanded, did not include a list of exhibits. Claimant asks us to direct the Board to determine whether it transmitted those exhibits to this Court, and if not, to transmit them. Claimant contends those exhibits would reveal inconsistent evidentiary rulings by the WCJ.

The 2011 decision is not involved in this appeal. Any alleged inconsistency that may have occurred in the admission of evidence in connection with a remanded decision is not relevant here. Moreover, as the Petitioner, Claimant was responsible to review the certified record and assure its completeness prior to submitting the case for a decision by this Court.

The Motion is denied. Employer's request for fees in connection with opposing the Motion is also denied.

involved a large number of hearings and generated a massive record. The Board, after reviewing that record, concluded the WCJ allowed the parties sufficient time to present their cases, and any time limits imposed were reasonable. We agree.

Claimant asserts the WCJ displayed bias by anticipating and inviting objections by Employer's counsel and striking or denying evidence on her own motion. The Board noted the proceedings were very lengthy, and the WCJ may have simply attempted to move them along. We agree with the Board that the WCJ's conduct, while not encouraged, did not support a finding of bias.

Claimant additionally contends the WCJ displayed personal animus toward Claimant's counsel. The Board disagreed. Indeed, the Board concluded Claimant's counsel behaved in a condescending and insulting manner toward the WCJ, who generally attempted to avoid engaging Claimant's counsel in bickering and argument during the proceedings.[8] This Court agrees with the Board that the WCJ did not lose her composure to an extent suggesting bias.

Claimant also argues the WCJ improperly issued different factual findings on remand of the Second Claim Petition. Claimant appears to suggest this was both legally impermissible and further suggestive of bias by the WCJ. However, the Board specifically instructed the WCJ to issue new findings on remand. Further, because the Board vacated the prior decision, new findings were necessary. Jensen.

---

[8] The Board commented: "The WCJ is to be commended, not only for her restraint in dealing with innumerable objections and contentious counsel, but also for conscientiously, professionally, and thoroughly addressing the 36-page Motion to Recuse, and for not taking the easy road by simply acquiescing in that motion." Bd. Op., No. A09-2235, 11/4/10, at 6.

20

Where a remand order requires a WCJ to render a new decision based on all the evidence, the WCJ does not exceed the scope of the remand order by making different credibility determinations on remand. A & P Tea Co. v. Workmen's Comp. Appeal Bd. (Giglio), 539 A.2d 51 (Pa. Cmwlth. 1988).

The WCJ did not abuse her discretion in denying the recusal motion.

## D. Unreasonable Contest

Finally, Claimant asserts the WCJ's errors prevented Claimant from obtaining an award of attorney fees based on Employer's unreasonable contest. In light of our disposition of Claimant's other issues, we need not reach the issue of unreasonable contest. See Cty. of Allegheny v. Workers' Comp. Appeal Bd. (Parker), 151 A.3d 1210 (Pa. Cmwlth. 2016), vacated in part on other grounds, 177 A.3d 864 (Pa. 2018) (claimant not entitled to attorney fee award for unreasonable contest where employer prevailed).

## IV. Conclusion

Based on the foregoing, this Court affirms the Board's decisions on the Reinstatement Petition and the Second Claim Petition.

_____
ROBERT SIMPSON, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Annamma Jacob,  :
        Petitioner  :
          :
        v.  :  No. 1810 C.D. 2017
          :
Workers' Compensation Appeal  :
Board (Cardone Industries, Inc. and  :
Phoenix/Travelers Insurance  :
Companies),  :
        Respondents  :

# **O R D E R**

**AND NOW**, this  18th  day of July, 2018, the orders of the Workers' Compensation Appeal Board are **AFFIRMED**.

Further, Petitioner's Motion for Order to Assure a Full Record is **DENIED**, and Respondents' responsive request for assessment of attorney fees is **DENIED**.

 

———————————————————
ROBERT SIMPSON, Judge